

FILED & JUDGMENT ENTERED
Steven T. Salata

May 17 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

In Re:

**Prosperity Park, LLC,**

    Debtor.

Case No.  10-31399

Chapter 11

## ORDER

THIS MATTER is before the Court upon the Debtor's Motion to Confirm its First Amended Disclosure Statement and Plan of Reorganization ("Motion to Confirm") and the Motion of Fifth Third Bank (the "Bank") for Relief from the Automatic Stay (the "PPK Stay Relief Motion" together with the Motion to Confirm, the "Motions").  Hearings on the Motions took place in Charlotte, North Carolina on April 14, 2011, April 27, 2011 and May 2, 2011.

Based upon the evidence presented at the hearings on the Motions and the arguments of counsel for the Debtor and the Bank, the Court makes the following:

## FINDINGS OF FACT

1.    On May 18, 2010 (the "Petition Date"), the Debtor and 10120 Prosperity Park Drive, LLC ("10210") filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code (the "Code").  The Debtor continues in possession of its assets as a debtor in possession under Sections 1107 and 1108 of the Code.

2.    The Debtor and 10210 are identified as single asset real estate entities on their Chapter 11 bankruptcy petitions filed with this Court.

\31002515.2

3.     The Debtor is the owner of six pad sites on Prosperity Church Road in northern Mecklenburg County. Five of the sites have an allowable building square footage of 6,000 square feet ("Pad Sites 4-8") and the sixth pad site ("Pad Site 9" and together with Pad Sites 4-8, the "Real Property") has an allowable building square footage of 19,236 square feet.

4.     The Bank is the holder of a Deed of Trust executed by the Debtor and Charles Lindsay McAlpine ("McAlpine") for the benefit of the Bank dated January 8, 2002 and recorded on January 10, 2002 in Book 13128 at Page 884 of the Mecklenburg County Register of Deeds (the "Deed of Trust") encumbering the Real Property.

5.     The Deed of Trust serves as security for a Promissory Note dated January 8, 2002 executed by the Debtor for the benefit of the Bank in the original amount of $1,900,000.00 (the "Note").

6.     10210 is the owner of two cold shell commercial condominium units (the "10210 Real Property") located within the Prosperity Park commercial development.

7.     10210 is an affiliate of the Debtor.

8.     The Bank is the holder of a Deed of Trust executed by 10210 for the benefit of the Bank dated August 10, 2006 and recorded on August 11, 2006 in Book 20891 at Page 765 of the Mecklenburg County Register of Deeds (the "10210 Deed of Trust") encumbering the 10210 Real Property.

9.     The 10210 Deed of Trust serves as security for a Promissory Note dated August 10, 2006 executed by 10210 for the benefit of the Bank in the original amount of $910,000.00 (the "10210 Note" and together with the Note, the "Notes").

10.    The Bank holds a secured claim against the Debtor in an amount not less than $430,280.09, which includes principal and interest as of April 21, 2011 and attorneys' fees and costs through February 14, 2011, the ending date of the period previously approved by this Court.

11.    The Bank holds an unsecured claim against the Debtor in an amount not less than $653,203.07, which includes principal and interest as of April 21, 2011 and attorneys' fees and costs through February 14, 2011, the ending date of the period previously approved by this Court, pursuant to the terms of a Guaranty Agreement dated August 10, 2006 executed by the Debtor for the benefit of the Bank guaranteeing the indebtedness of 10210 to the Bank.

12.    According the Bank's most recent appraisal of the Real Property dated August 3, 2010, Pad Site 9 has a value of $260,000.00 and Pad Sites 4 through 8 each have a value of $82,000.00.

13.    According to the Bank's most recent appraisal of the 10210 Real Property dated August 3, 2010, the 10210 Real Property has a value of $540,000.00.

14. According to the Debtor's most recent appraisal of the Real Property dated April 30, 2010, Pad Site 9 has a value of $663,419.00 and Pad Sites 4 through 8 each have a value of $226,643.00.

15. According to the Debtor's most recent appraisal of the 10210 Real Property dated April 30, 2010, the 10210 Real Property has a value of $660,000.00.

16. The Debtor failed to pay 2008 and 2009 property taxes on the Real Property in the amount of $7,818.07. The Bank paid the 2008 and 2009 delinquent taxes on behalf of the Debtor in order to protect its interest in the Real Property. The 2010 taxes are currently payable and delinquent in the amount of $7,167.91, including interest through April 24, 2011.

17. According to the monthly reports filed by the Debtor with the Court, the Debtor has less than $1,000.00, has had no income during the Chapter 11 case, and has no source of income other than the potential sale of the Real Property.

18. On July 19, 2010, the Debtor together with 10210 filed a consolidated Disclosure Statement (the "Disclosure Statement") and Plan of Reorganization (the "Original Plan") and a Motion for Substantive Consolidation Pursuant to Section 105 of the Code (the "Motion for Consolidation").

19. On August 26, 2010, the Bank filed an objection to the Substantive Consolidation Motion.

20. On August 30, 2010, this Court entered an Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan (the "Disclosure Statement Order") whereby the Court fixed October 4, 2010 as the last day for filing written acceptances or rejections of the Original Plan and set October 12, 2010 as the date for hearing on confirmation of the Original Plan.

21. On September 30, 2010, the Bank filed a Ballot rejecting the Original Plan (the "Ballot").

22. On October 1, 2010, the Bank filed an Objection to Confirmation of the Debtors' Plan of Reorganization (the "Objection to Plan") and stated that the Objection to Plan filed by the Bank was without prejudice to the Bank's Objection to Consolidation.

23. The Debtor and 10210 subsequently withdrew their Motion for Consolidation.

24. The Bank was the only creditor to file a ballot or an objection in response to the Debtor's Original Plan.

25. There were no ballots filed accepting the Original Plan as no other creditors or parties in interest filed ballots.

\31002515.2

26. The Bank filed a Motion for Relief from Stay on August 25, 2010 (the "10210 Stay Relief Motion") to obtain stay relief in the 10210 case with respect to the 10210 Real Property.

27. On December 20, 2010 (the "Relief from Stay Hearing Date"), the Court denied the Bank's 10210 Stay Relief Motion and entered findings of value that were conditioned on the subordination of the unsecured claims of McAlpine (the "McAlpine Insider Claims"), a principal in both the Debtor and 10210, to all other unsecured claims, including those of the Bank. In addition, the Court conditioned its findings on value on the Debtor and 10210 (i) obtaining separate counsel and (ii) filing separate plans of reorganization on or before thirty days from the 10210 Relief from Stay Hearing Date (the "Bench Ruling").

28. The Debtor and 10210 failed to obtain separate counsel and failed to file separate plans of reorganization as required by this Court's Bench Ruling.

29. The Bank filed Motions to Dismiss or Convert in both the 10210 case and the Debtor's case on January 31, 2011 (the "Motions to Dismiss") due to the failure of the Debtor and 10210 to comply with (i) the Court's Bench Ruling and (ii) the time limits imposed for filing a plan of reorganization under the Code.

30. The Debtor filed an Amended Plan of Reorganization on March 11, 2011 (the "Amended Plan" and together with the Original Plan, the "Plan").

31. The deadline for filing a ballot accepting or rejecting the Plan was April 25, 2011.

32. The Bank timely submitted Class 3 and Class 5 ballots rejecting the Plan.

33. A ballot from Hidden Utilities Inc. ("Hidden Utilities") accepting the Plan was received by the Court on April 29, 2011.

34. On April 4, 2011, the Bank filed a Motion for Relief from Stay (the "362(d)(3) Motion") pursuant to section 362(d)(3) of the Code arguing that the Debtor failed to comply with the time restrictions imposed by the Code to file a plan of reorganization because the Debtor did not file a plan with a reasonable possibility of confirmation within 90 days from the Petition Date or begin making interest payments to the Bank within the same period.

35. The Court entered an Order granting the 10210 Stay Relief Motion on April 6, 2011 due to a lack of adequate protection.

36. On April 14, 2011, at the hearing on the Bank's 362(d)(3) Motion, the Court determined that it would consider the Amended Plan in its analysis of whether the Debtor complied with the requirements of section 362(d)(3).

THEREFORE, based upon the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

\31002515.2

1.	The proponents of a chapter 11 plan have the burden of proving by at least a preponderance of the evidence that the plan satisfies all the requirements of Section 1129(a) and Section 1129(b) of the Code.

2.	The Debtor's Plan does not impermissibly classify the unsecured claim of the Bank as a Class 5 claim and the unsecured claim of Hidden Utilities as a separate Class 4 claim. The Debtor's claim classifications under the Plan are appropriate under the standard set forth in Section 1122(a) of the Code.

3.	Based upon the evidence presented, the Court finds that excusable neglect exists to allow for the consideration of the ballot filed by Hidden Utilities after the expiration of the time period imposed for filing ballots.

4.	Notwithstanding the foregoing, the Debtor's Plan fails to satisfy the requirements of Section 1129(a)(10) of the Code because the only impaired creditor under the Plan that indicated an intent to vote in favor of the Plan is an insider. Under Section 1129(b)(10), if a class of claims is impaired under the plan, at least one impaired, non-insider class has to vote to accept the plan in order for the plan to be confirmable. See In re Bryson Properties, XVIII, 961 F.2d 496, 502 (4th Cir. 1992). Under section 101(31) of the Code, an insider may include (i) a director of the debtor, (ii) an officer of the debtor, (iii) a person in control of the debtor, (iv) partnerships in which the debtor is a general partner, (v) a general partner of the debtor, or (vi) a relative of any of the above. See Section 101(31). There also exists a category of creditors, sometimes called "non-statutory insiders," who fall within the definition of insider but outside of any of the enumerated categories. See In re Winstar Communications., Inc., 554 F.3d 382, 395 (3rd Cir. 2009). "'[A]n insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny.'" See In re Broumas, 1998 U.S. App. LEXIS 3070, *20 (4th Cir. 1998). Under this inclusive interpretation, the Court determines that Hidden Utilities is an insider of the Debtor through the familial relationships of Shane Seagle, a former employee of The McAlpine Group, LLC, a guarantor of the indebtedness under the Note.

5.	The Debtor's Plan fails to satisfy the requirements of Section 1129(b)(1) of the Code because the Plan unfairly discriminates in its treatment of the Bank's claim. To confirm a plan of reorganization, the Debtor must show that the "plan does not discriminate unfairly…with respect to each class of claims or interest that is impaired under, and has not accepted, the plan." See 11 U.S.C. § 1129(b)(1). A rebuttable presumption that a plan is unfairly discriminatory will arise when "there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in….an allocation under the plan of materially greater risk to the dissenting class in connection with the proposed distribution." See In re Dow Corning, Inc., 244 B.R. 705, 710-11 (Bankr. E.D. Mich. 1999). The Bank's unsecured claim under Class 5 constitutes a dissenting class. The Hidden Utilities claim under Class 4 and the other insider claims under Class 6 are of the same priority as the Bank's unsecured claim. However, the treatment of the Bank's claim under the Plan compared to the claims of Hidden Utilities and the insiders under the Plan will result in the Bank having to rely on estimations of value of the Real Property whereas the other creditors of the same priority rely on a liquidation of the Real Property. Thus the Bank is forced to bear much greater risk under the Debtor's Plan.

\31002515.2

6. The Debtor's Plan fails to satisfy the requirements of Section 1129(b)(2) of the Code because the Plan does not offer the Bank the indubitable equivalent of its claims. The Plan proposes that the Debtor will convey Pad Site 9 to the Bank in full satisfaction of the Bank's Class 3 and Class 5 claims. The Debtor has the burden of proof to show the "indubitable equivalence" of the offered property. See In re B.W. Alpha, Inc., 100 B.R. 831 (Bankr. N.D. Tex. 1988). This burden is more than a mere preponderance of the evidence and more than even beyond a reasonable doubt, but rather the indubitable equivalence of a cash payment on the date of confirmation. Id. at 833. The burden is akin to a clear and convincing standard. Id. Where the creditor is earmarked to receive *part* of its collateral, any such plan will be subject to extremely close scrutiny to insure that the creditor will actually receive the indubitable equivalent of its secured claim. See In re Arnold and Baker Farms, 177 B.R. 648, 660 (9th Cir. 1994). As the court stated in In re Arnold & Baker Farms,

> Experience has taught us that determining the value of real property at any given time is not an exact science. Because each parcel of real property is unique, the precise value of land is difficult, if not impossible, to determine until it is actually sold. Nevertheless, bankruptcy courts have traditionally been requested, out of necessity, to determine the value of various types of property, including real property, and yet courts have recognized the difficulty of being able to determine accurately the value of land. For instance, in *In re Walat Farms Inc.,* 70 Bankr. 330 (Bankr. E.D. Mich. 1987), the court stated:
>
> Similarly, we concede to doubts about our ability to fix the "value" of the land in question. We need not make a pronouncement that no plan proposing the surrender of a portion of mortgaged land to a mortgagee in return for a compelled release of the lien on the remainder of the property will ever be confirmed. Suffice it to say, however, that no matter how hot the market for real estate may become in the future, the market for farm real estate here and now is not such which would permit us to hold that the value of the land being offered is the indubitable equivalent of [the mortgagee]'s claim. "Indubitable" means "too evident to be doubted." Webster's Ninth New Collegiate Dictionary (1985).

85 F. 3d 1415, 1421 (9th Cir. 1996).

7. The Plan and real estate valuation issues in this case are analogous to In re Arnold & Baker Farms. Id. Where there is a wide divergence in opinions on value between competent real estate appraisers engaged by the Debtor and the Bank, the Court is unable to find indubitable equivalence. To rely solely on the Debtor's appraised values would put the Bank in a precarious position if that value turns out not to be correct. The Bank would end up with less than its claim amount and would have no recourse against the Debtor or any of the guarantors. The Plan thus does not offer the Bank the indubitable equivalent of its claims.

\31002515.2

8. The Court did not consider the testimonial evidence from Robert Pressley, a certified commercial real estate broker, in its determination of the fair market value of the Real Property.

9. The Debtor's Plan does not meet the requirements of confirmation under Section 1129(a) and Section 1129(b) of the Code.

10. Thus, the Debtor failed to comply with the time periods imposed by Section 362(d)(3) of the Code.

11. Therefore, the Court hereby finds and concludes as a matter of law and fact, that just cause exists to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(3), to allow the Bank to proceed with its rights and remedies in, against and to the Real Property.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:**

1. Confirmation of the Debtor's Chapter 11 Plan is hereby DENIED; and

2. The Bank's 362(d)(3) Motion for Relief is GRANTED; and

3. The Bank is granted relief from the automatic stay to proceed with all of its rights and remedies in, against, and to the Real Property; and

4. The relief from automatic stay granted herein is effective immediately and is not subject to the ten day waiting period under Bankruptcy Rule 4001(a)(3); and

5. The relief from stay granted in this Order shall remain in full force and effect in any Chapter 7 case to which the Debtor's bankruptcy case may be converted.

This Order has been signed electronically.                                        United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order.

\31002515.2